NOT FOR PUBLICATION                                    (Docket No. 19)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                        :
HENRY MILLER, et al.,                   :
                                        :
            Plaintiffs,                 :     Civil No. 08-2296 (RBK/AMD)
                                        :
        v.                              :     **OPINION**
                                        :
SELECTIVE INSURANCE COMPANY             :
OF AMERICA,                             :
                                        :
            Defendant.                  :
_____:

**KUGLER**, United States District Judge:

        This matter comes before the Court upon a motion by Defendant Selective Insurance

Company of America ("Selective" or "Defendant") for summary judgment.  Plaintiffs Charlene

and Henry Miller ("the Millers" or "Plaintiffs") filed a Complaint asserting claims against

Selective arising out of an insurance dispute for breach of contract and breach of the duty of good

faith and fair dealing.[1]  For the reasons expressed below, the Court will grant Defendant's

motion.

**I.      BACKGROUND**

        Henry and Charlene Miller own a one story rancher-style home in Medford, New Jersey

(the "Property").  In mid-April of 2007, heavy rain damaged the Property.  The Millers hold a

Standard Flood Insurance Policy ("SFIP") issued by Selective pursuant to the National Flood

_____
        [1]   Plaintiffs' original Complaint named Encompass Insurance Company of New Jersey
as an additional defendant.  Encompass Insurance is no longer a party to this action.

Insurance Program ("NFIP").[2]   As a result of damage to the Property sustained during the April

rain, the Millers filed for insurance benefits.

Selective assigned Christopher Cherewich, an independent claims adjuster, to investigate

the Millers' claim.  On April 28, 2007, Mr. Cherewich issued a preliminary report, opining that a

general or temporary condition of flooding existed at the Property from April 16 through April

18.  (Decl. of Berkowitz at Ex. A.)  The Millers hired Scott J. Heyer, an engineer from the

consulting firm of Lippincott & Jacobs, to examine the basement foundation and exterior

chimney.  At the time of Mr. Heyer's inspection, most of the foundation walls were concealed

behind architectural wall finishes.  As a result, Mr. Heyer conducted a limited visual inspection

of the non-concealed portions of the foundation walls, leading him to the opinion that the

masonry foundation walls had failed and that remedial repairs were required.  (Decl. of

Berkowitz at Ex. B.)

The SFIP required the Millers to submit a proof of loss statement to FEMA within sixty

days of the loss-causing event.  The Millers' deadline for submitting the proof of loss was June

15, 2007.  On June 6, 2007, the Millers' long-time counsel, Attorney Steven A. Berkowitz, called

Selective to discuss securing a proof of loss filing extension.  Mr. Berkowitz explained to Flood

Claims Examiner Melody Rauscher that the Millers had assessed some of the loss but would

require more time to compile information related to foundation damage to include an engineering

---

[2]  The National Flood Insurance Program is a federally subsidized insurance program
administered by the Federal Emergency Management Agency and the Federal Insurance
Mitigation Administration designed to provide access to affordable flood insurance that would be
unavailable otherwise.  See 42 U.S.C. §§ 4001 & 4002 (2006); Suopys v. Omaha Prop. & Cas.,
404 F.3d 805, 807 (3d Cir. 2005); Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523,
528 (D.N.J. 2000).

report and a repair-cost estimate due to Mr. Miller's serious medical condition.  Ms. Rauscher advised Mr. Berkowitz that Selective was not authorized to grant extensions, but that Selective somewhat routinely filed late claims with FEMA accompanied by an explanation.  In Ms. Rauscher's experience, such requests were never denied.  (Decl. of Berkowitz at Ex. C.)  Despite giving these assurances, Selective never filed an extension request with FEMA.

The day before the proof of loss filing deadline, the Millers still had not completed assessing the damage to the foundation.  Mr. Cherewich spoke to Mr. Berkowitz and suggested that he file a "partial" Proof of Loss to comply with the sixty-day deadline and then supplement that filing at such a time when the complete assessment was available.   (Decl. of Berkowtiz at Exs. E, F.)  Mr. Cherewich reassured Mr. Berkowitz that supplementing a Proof of Loss was one of the Millers' rights under the SFIP.  (Id.)  In accordance with this advice, Mr. Berkowitz submitted Plaintiffs' "Undisputed/Partial Proof of Loss" statement for the amount of $3,388.36. (Decl. of Berkowtiz at Ex. H.)  Selective paid the claim.

On July 27, 2007, at the behest of Selective, United Technical Consultants, L.L.C. ("UTC") inspected the Property to assess the extent of damage to the foundation attributable to the April rain even.  (Decl. of Berkowtiz at Ex. H.)  Amongst other things, UTC examined the cracks along the front and back basement walls.  UTC found that several of the cracks likely developed during the April rain as water saturated the surrounding soil, thereby increasing hydrostatic pressure on the Property's foundation.  UTC also found that water had likely washed soil out from beneath the foundational slab.  The language used by UTC in its report indicated that it did not consider the April rain to have risen to the level of "flood."  UTC noted that a comprehensive evaluation could not be conducted due to Plaintiffs' failure to remove the wall

finishes and other items stored in the basement.  UTC recommended further investigation.

On August 9, 2007, Selective denied the Millers' supplemental claim on the basis that the damage was not covered under the Exclusions section of the SFIP.  (Decl. of Berkowitzowitz at Ex. I.)  Selective's denial notice observed that "[t]he engineers final report indicates that there are pre-existing cracks, as well as hydrostatic pressure and normal settlement and cracks unrelated to this flooding event of 4/16/2007."  (Id.)

On September 11, 2007, the Millers appealed the denial to FEMA arguing that the damage to the foundation was not preexisting.  (Decl. of Berkowitzowitz at Ex. J.)  In support of their arguments on appeal, Plaintiffs offered the findings of the Lippincott & Jacoby report. Plaintiffs' appeal also explained the Millers' reasons for failing to include the foundation claims in the original proof of loss submitted to Selective.

In response to Plaintiffs' appeal, FEMA Claims Supervisor Nate Derrell issued a letter to NFIP Claims Manager Donald Waters dated October 10, 2007.  In the letter, Mr. Derrell reviewed the UTC report and compared it against the Lippincott & Jacoby report.  Mr. Derrell noted that based upon UTC's findings, and the fact that Selective had previously accepted that the April rain event qualified as a flood, "coverage would seem to be afforded under the policy." (Decl. of Berkowitzowitz at Ex. L.)  Mr. Derrell recommended that Selective adjust the damage to the foundation walls, noting that adjustment might require another inspection in light of the fact that an exhaustive assessment of the foundation was never conducted.  The FEMA letter noted that its comments or recommendations could be altered by findings of fact not then available to it.

On March 21, 2008, Plaintiffs filed suit in New Jersey Superior Court.  Plaintiffs alleged

that Selective's failure to approve their claim for additional compensation amounted to a breach of their insurance contract as well as of the duty of good faith and fair dealing. Plaintiffs sought a declaratory judgment, compensatory and punitive damages, as well as attorney fees and costs.

On April 4, 2008, Selective sent a letter to Mr. Berkowitz indicating that it would be implementing the FEMA recommendations. (Decl. of Berkowitzowitz at Ex. N.) Selective scheduled an appointment for UTC to re-inspect the premises. UTC's second inspection resulted in substantially similar findings regarding the existence of newly-formed horizontal cracks on the front and back walls, the movement of soil from under the slab, and UTC's inability to comprehensively inspect due to the presence of wall finishes and stored items in the basement. After UTC's inspection, Selective denied coverage again, this time based upon the Millers' repeated failure to provide full access to the inspecting engineers.

Selective removed the action to this Court on May 12, 2008.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.

5

1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the district court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

The SFIP is a creature of statute, codified at 44 C.F.R. Pt. 61, App. A (2009).  All

disputes arising out of the handling of any claim under a SFIP are governed by the National

Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq., the regulations promulgated thereunder

by the Federal Emergency Management Agency ("FEMA"), and the federal common law.  44

C.F.R. Pt. 61, App. A(1), Art. IX; Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 807 (3d Cir.

2005).  FEMA authorizes private companies, known as "Write Your Own" ("WYO")

Companies, to issue SFIP's and adjust SFIP claims.[3]  Id. (citing 44 C.F.R. §§ 61.13(f), 62.23 and

42 U.S.C. § 4071(a)(1) (2003)).  WYO Companies must handle SFIP claims by applying internal

company standards in light of FEMA guidance.  Suopys, 404 F.3d at 807 (citing 44 C.F.R. §

62.23(i)(1) (2003)).

In order to qualify for benefits under the SFIP, an insured must comply with all of the

SFIP's terms and conditions.  44 C.F.R. Pt. 61, App. (A)(1), Art. I(2).  An insured must also

perfect its obligations under the SFIP as a prerequisite to bringing an action against a WYO

Company to contest a denial of coverage.  44 C.F.R. Pt. 61, App. A(1), Art. VII(R).  The Third

Circuit strictly construes a claimant's obligation to comply with SFIP provisions.  Suopys, 404

F.3d at 809.

Selective argues that the Millers' supplemental coverage claim for damage sustained to

the Property's foundation must fail because the Millers did not file a timely proof of loss for

these losses.  In the alternative, Defendants argue that Plaintiffs are not entitled to coverage

because they have failed to provide Selective and its adjusters with access to the concealed

---

[3] WYO Companies collect premiums from policy-holders and pay claims.  Messa, 122 F.
Supp. 2d at 529.  WYO Companies deposit premiums collected from policy-holders into the
National Flood Insurance Fund in the United States Treasury, less the WYO's fees and costs.  Id.
(citing 42 U.S.C. § 4017(d)).  If a WYO Company is sued, the federal government reimburses it
for costs of suit.  Id. (citing 44 C.F.R. § 62.23(i)(6)).

basement walls as allegedly required by the SFIP.[4]

A SFIP requires an insured to submit a proof of loss to its WYO within sixty days of the alleged date of loss. 44 C.F.R. Pt. 61, App. A(1), Art. VIII(J)); Suopys, 404 F.3d at 810. A proof of loss statement must be signed and sworn by the insured and must contain various pieces of information such as a short explanation of how the loss occurred, specifications of buildings damaged, detailed estimates of repairs required, and an inventory of damaged property. 44 C.F.R. Pt. 61, App. A(1), Art. VII(J). An insured's failure to comply with the proof of loss provision bars recovery on an otherwise valid claim. Suopys, 404 F.3d at 810.

In this case, it is undisputed that the Millers filed an initial proof of loss statement claiming a loss of $3,388.36 and that Selective paid this claim in full. It is also undisputed that the Millers made it known to Selective that they intended to reserve the right to supplement the initial proof of loss as information regarding the foundation became available. The Millers concede, however, that they never submitted a second Proof of Loss for the claimed foundation damage. (Pls.' Brief at 12.) Thus, it is clear to the Court that the Millers' claims must fail because they did not strictly comply with the SFIP's requirement that claims be supported by a proof of loss statement. See Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523, 530 (D.N.J. 2000) ("Plaintiffs' failure to submit a proof of loss statement, late or otherwise, for an amount in excess of that already paid by [Defendant], represents a complete failure to comply

---

[4] Because the Court agrees with Selective that Plaintiffs' claims are barred by operation of the SFIP's proof of loss provision, the Court does not reach Selective's coverage arguments. See Suopys, 404 F.3d at 808 n.2 (declining to consider substance of coverage dispute where court held that plaintiff's failure to submit proof of loss barred recovery).

with the federal regulations . . . .").[5]

Plaintiffs counter that Selective should nevertheless be estopped from raising a time-bar defense because Selective never "asked, suggested, or otherwise intimated that a second proof of loss was necessary"and because of the various misrepresentations made by Selective representatives to the Millers.  (Pls.' Brief at 10.)  Generally speaking, a party seeking to establish equitable estoppel must show (1) a misrepresentation by another party; (2) which it reasonably relied upon; (3) to its detriment.  Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 59 (1984).  Proponents of estoppel bear the burden of proof.  United States v. Asmar, 827 F.2d 907, 912 (3d Cir. 1987).

Plaintiffs' argument that they relied on Selective's failure to instruct them to file a second proof of loss fails as a matter of law because the Millers' reliance was not reasonable.  Reliance is reasonable where the party asserting estoppel did not and should not have known that it was being mislead.  Heckler, 467 U.S. at 59.  It is well established that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law."  Id. at 63.  The SFIP, which is published in the Code of Federal Regulations, clearly requires submission of a proof of loss statement for amounts allegedly owed

---

[5]  The SFIP does not directly speak to the issue of whether supplemental claims are authorized or prohibited.  See Peterson v. Nat. Flood Ins. Program, 200 F. Supp. 2d 499, 505 (E.D. Pa. 2002).  As the Millers did not file a proof of loss statement in support of their supplemental claims, however, the Court need not reach the question of whether the Millers' timely submission of their initial proof of loss statement would have rendered "timely" a supplemental proof of loss statement filed without the initial sixty day window.  But, see, Sodi II, LLC v. Selective Ins. Co. of Am., No. 06-2573, 2008 WL 141204, at *3-*4 (D.N.J. Jan. 11, 2008) (rejecting plaintiff's argument that its second proof of loss form, submitted more than sixty days from the date of the alleged loss, should be considered "timely" because it "merely amend[ed]" the original claim, which was supported by a timely proof of loss).

under the policy.  Thus, the Millers should have known that a proof of loss statement was

necessary to support their further claims.  This renders their reliance on Selective's silence

unreasonable.  See Brookline Mining Equip., Corp. v. Selective Ins. Co. of Am., 74 F. Supp. 2d

477, 481-82 (W.D. Pa. 1999).

Plaintiffs' estoppel argument based on Ms. Rauscher's representations and Mr.

Cherewich's advice also fails because these misrepresentations are not egregious enough to estop

government agents from strictly enforcing the law in matters affecting the federal fisc.  The

Supreme Court has not definitively addressed the question of whether an estoppel claim can ever

lie against the government.  See United States v. Dahl, No. 08-1050, 2009 WL 2982644, at *2

(D. Minn. Sept. 11, 2009) (citing Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 423 (1990)

("We leave for another day whether an estoppel claim could ever succeed against the

Government.")).  The Third Circuit has taken the position that a private party can do so only in

those extraordinary cases where the private party shows "affirmative misconduct on the part of

the government officials."  Asmar, 827 F.2d at 912.  The Third Circuit's position "reflects the

need to balance both the public interest in ensuring government can enforce the law without

fearing estoppel and citizens' interests 'in some minimum standard of decency, honor, and

reliability in their relations with their Government.'"  Fredericks v. Comm'r of Internal Revenue,

126 F.3d 433, 438 (3d Cir. 1997) (quoting Asmar, 827 F.2d at 912).

In this case, Plaintiffs' evidence falls short of showing affirmative misconduct.  Plaintiffs

do not present any evidence tending to prove that Ms. Rauscher assured Mr. Berkowitz that

Selective would seek an extension knowing Selective would fail to do so.  Neither do Plaintiffs

present evidence tending to prove that Mr. Cherewich told Mr. Berkowitz that Plaintiffs retained

a policy right to supplement their initial claim intending to mislead him.  See Sydnor v. Office of

Pers. Mgmt., 336 Fed. Appx. 175, 182 (3d Cir. June 16, 2009) (unpublished opinion) (refusing to

apply estoppel against government absent a showing that government agents intentionally

mislead plaintiff).  At most, the record supports the conclusion that Selective's

misrepresentations amounted to bad advice, poor communication, and perhaps negligent claim

handling.  Although regrettable, such conduct does not rise to the level of affirmative

misconduct.[6]  See Phelps v. FEMA, 785 F.2d 13 (1st Cir. 1986) (rejecting plaintiff's estoppel

claim despite the fact that government representatives erroneously assured plaintiff that he did

not have to file a proof of loss); Crisci v. United States, No. 2:07cv1331, 2009 WL 3055314, at

*3 (W.D. Pa. Sept. 21, 2009) (citing Fredericks, 126 F.3d at 438) (noting that affirmative

misconduct is more than "mere omission, negligent failure, or erroneous oral advice").  This

conclusion comports with the Third Circuit's recent decision in Suopys wherein the court

---

[6] Plaintiffs' reliance on these representations also strikes the Court as unreasonable.  Ms.
Mauscher's assurances were given to Mr. Berkowitz orally.  See Pediatric Affiliates, P.A. v.
United States, 2006 WL 454374, at *8 (D.N.J. Feb. 23, 2006) (citing Heckler, 467 U.S. at 65)
("Reliance is undermined when it is based on oral advice, unconfirmed by a writing.").  Further,
Mr. Berkowitz, an attorney, appears to have relied heavily on Mr. Cherewich's advice despite the
SFIP's candid warning that potential claimants should not rely on FEMA's assistance in
complying with the proof of loss requirement.  See Wagner v. Director, FEMA, 847 F.2d 515,
519-20 (9th Cir. 1988).  Indeed, the SFIP provides, in pertinent part:

> The insurance adjuster whom we hire to investigate your claim may furnish you
> with a proof of loss form, and she or he may help you complete it.  However, this
> is a matter of courtesy only, and you must still send us a proof of loss within 60
> days after the loss even if the adjuster does not furnish the form or help you
> complete it.

44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(7) (emphasis added).  Finally, it is worth noting that Mr.
Cherewich never instructed the Millers not to file a second proof of loss.  He simply advised
them that filing supplemental claims was a policy right.

instructed that an insured's burden to strictly comply with the SFIP is not allayed by "the
representations and assistance, or lack thereof, provided by the insurer or its adjuster."  Suopys,
404 F.3d at 810 (citing Dawkins v. Witt, 318 F.3d 606 (4th Cir. 2003) and Phelps v. FEMA, 785
F.2d 13 (1st Cir. 1986)).

      The Millers' final argument is that FEMA's decision on their appeal requires this Court to
deny Defendant's motion.  Notably, Plaintiffs do not argue that the FEMA letter waived the
proof of loss requirement.[7]  Rather, Plaintiffs insist that Selective has ignored FEMA's
"directive" to adjust the Millers' claim.  To dispose of this argument it is enough to point out that
FEMA's letter does not appear to direct Selective to do anything.  Rather, the FEMA letter
"recommends" that Selective reinspect the Property and adjust the claim in light of FEMA's
determination that the foundation damage was likely covered under the SFIP.  Moreover, far
from ignoring FEMA, Selective appears to have complied with its recommendations by
arranging for a reinspection of the Property.  Indeed, Selective only denied coverage after, and
because, Plaintiffs failed yet again to provide complete access to the concealed foundation walls.

---

     [7]  This argument would fail.  The SFIP may not be "altered, varied, or waived other than
by the express written consent of the Federal Insurance Administrator through the issuance of an
appropriate amendatory endorsement."  44 C.F.R. § 61.13(d).  Although Plaintiffs' appeal papers
discuss, by way of background, Plaintiffs' failure to submit an additional proof of loss within the
sixty-day period, FEMA's decision letter in no way addresses the timeliness issue.  Accordingly,
the FEMA letter cannot be said to expressly alter or waive the SFIP's proof of loss requirements.

IV.    **CONCLUSION**

In sum, there is no genuine dispute that the Millers failed to submit a proof of loss statement supporting their additional claims.  This failure operates to forestall Plaintiff's claims.[8] As a result, and for the reasons expressed above, the Court shall grant Defendant's motion for summary judgment.


Dated: 12-15-2009                                                   /s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge

---

[8]  Although neither party addresses the issue, both appear to concede – and the Court agrees – that Plaintiff's good faith and fair dealing allegations do not survive this motion.  State law claims based on alleged mishandling of SFIP claims are preempted by the NFIA.  See, e.g., O'Kane v. Hartford Fire Ins. Co., No. 04-1667, 2005 U.S. Dist. LEXIS 28907 (D.N.J. Nov. 17, 2005).  But, see, Messa v. Omaha Prop. & Cas., 122 F. Supp. 2d 513,  (D.N.J. Mar. 8, 2000) (noting the difference, from a preemption perspective, of state law claims alleging unlawful policy procurement and state law claims alleging unlawful policy handling and observing that the NFIA may not preempt the former).

13